PEOPLE *v.* MICHAEL ROBINSON

1. EVIDENCE—CRIMINAL LAW—EXTRAJUDICIAL STATEMENT—VOLUNTARINESS—CREDIBILITY—ADMISSIBILITY.

Finding of trial court that defendant's pretrial statement in which he admitted participation in a felony-murder was voluntary was proper, whether an independent examination of the entire record on the issue of voluntariness is made or the "clearly erroneous" standard is applied, where the evidence of involuntariness consisted solely of defendant's uncorroborated self-serving statements depending on his credibility, which, when viewed in the light of the defendant's escape attempt, his possession of the murder weapon and his attempt to get rid of it, his admittedly false first statement and his allegation that he made the statement so that his wife could go home when she was neither charged nor in custody does not convince the Court of Appeals any more than it did the trial court.

2. APPEAL AND ERROR—REVERSAL—NEW TRIAL—JUSTICE.

Appellate reversal of a jury verdict or the granting of a new trial are restricted to those cases where after an examination of the entire cause it affirmatively appears that the error complained of has resulted in a miscarriage of justice (CL 1948, § 769.26).

3. EVIDENCE—ADMISSIBILITY—ERROR—NEW TRIAL—JUSTICE.

Error in the admission of evidence does not constitute grounds for granting a new trial or for setting aside a verdict unless the refusal to do so appears inconsistent with substantial justice (GCR 1963, 529.1).

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence §§ 611, 612.
[2, 4] 5 Am Jur 2d, Appeal and Error § 783.
[3–6] 5 Am Jur 2d, Appeal and Error § 778.

4. Appeal and Error—Reversal—New Trial—Justice.

Court rule and statute which require reversal of a jury verdict or the granting of a new trial only in cases where error has resulted in injustice are not cure-alls for every type of error; hence, an appellate court must review the entire case and determine whether the error complained of has resulted in a miscarriage of justice or whether refusal to reverse because of the error is inconsistent with substantial justice (CL 1948, § 769.26; GCR 1963, 529.1).

5. Evidence—Criminal Law—Other Crimes—Admissibility—Appeal and Error.

Violation of the general rule that evidence which shows or tends to show that a defendant has committed another crime wholly independent of, and unconnected with, that for which he is on trial is inadmissible and irrelevant, does not require automatic reversal in every case but only in those cases where the admission of such evidence results in a miscarriage of justice or where the failure to reverse would be inconsistent with substantial justice.

6. Evidence—Criminal Law—Other Crimes—Appeal and Error.

Criminal defendant's reply, during cross-examination in a prosecution for first-degree murder, that he had stolen an automobile does not constitute the requisite miscarriage of justice or inconsistency with substantial justice necessary to compel reversal or a new trial where defendant's testimony on direct examination as to his participation in a number of other crimes had established his own criminal status and untruthfulness before mention of the stolen car, where the evidence of defendant's guilt is overwhelming and where the only evidence supporting his defense of alibi is his own testimony (CL 1948, § 750.316).

Appeal from Recorder's Court of Detroit, Joseph A. Gillis, J. Submitted Division 1 March 3, 1970, at Detroit. (Docket No. 7,048.) Decided April 28, 1970. Leave to appeal granted November 24, 1970. 384 Mich 781.

Michael M. Robinson was convicted of first-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Samuel J. Torina,* Chief Appellate Lawyer, and *Angelo A. Pentolino,* Assistant Prosecuting Attorney, for the people.

*Owen J. Galligan,* for defendant on appeal.

Before: Lesinski, C. J., and Quinn and V. J. Brennan, JJ.

Quinn, J.   October 29, 1966, during the robbery of a jewelry store, William Finnk, a part owner of the store, was shot and killed.   November 12, 1966, after observing defendant run a stop sign, the police gave chase.   After running another stop sign, defendant drove into a gas station, hit a gas pump and sheared it off, starting a fire.   His car went through the front window of the station, at which time defendant left the vehicle and ran away.   The police followed and finally cornered defendant in a private garage.   Immediately prior to being apprehended, defendant was observed tossing a gun beneath the car that was parked in the garage.   The gun was recovered and ballistic tests later the same day established that it was the gun from which five bullets taken from Finnk's body had been fired.

Defendant was arrested about 3:15 p.m. on November 12, 1966; he was brought to police headquarters at 3:45 p.m., after which the ballistic tests were made.   About 4 p.m. some preliminary questioning of defendant began, and at 5:55 p.m. detective Casey began questioning defendant.   The latter questioning resulted in a statement of defendant, taken in long-hand by detective Casey, read by defendant, corrected at his suggestion and signed by defendant at 7:50 p.m. on November 12th.

In this statement, defendant said he bought the gun from a man named Jeff on the night of November 5, 1966. He further stated that on October 29, 1966, after he observed an employee of the store that was robbed enter it with two colored men and later saw the two colored men leave the store, enter an automobile and drive away, he (defendant) entered the store. On entry, defendant said he saw a man's feet sticking out, safe open and papers strewn about. Defendant said he took two watches that were on the floor and ran away. He stated that he learned from reading the paper two days later a man was killed in the robbery. Defendant was wearing one of the stolen watches at this interrogation and he said the other one was at home. At 8:30 p.m. on November 12th, he executed a consent to search his home.

At 9:40 on November 12th, defendant was taken to Detroit General Hospital for treatment of a cut on his leg which resulted from the accident at the gas station. At 10:15 p.m., he was returned to the ninth floor of police headquarters, and at 10:30 p.m. on the 12th, defendant informed the police he wanted to make a statement. An assistant prosecuting attorney and a stenographer took this statement between 11 p.m. and 11:45 p.m. on November 12th.

On search of defendant's home on the evening of November 12th, the police recovered three watches and a black onyx ring that were taken from the robbed store. At the request of defendant's wife, the officer conducting the search brought her back to police headquarters with him.

In the statement taken by the prosecuting attorney, defendant admitted the statement he gave to detective Casey was untrue, it was "garbage". Defendant stated that he, Clarence and Jeff went to the store to rob it; that he (defendant) drove the get-

away car, and that he was given some watches, some rings and about $50 by the other two after the robbery. (On search of defendant after his arrest, the police found $50 in his shoe.) Defendant said Jeff was armed with a P–38 and the other guy had a .38. Defendant further stated that Jeff gave him the .32 revolver the night of October 29, 1966 after the robbery, but that defendant knew nothing of the shooting until October 31, 1966. Thereafter, defendant said he questioned Jeff about the shooting and that Jeff admitted shooting a man in the store after the latter pulled a gun on Jeff.

Defendant was charged with and tried for first-degree murder. CL 1948, § 750.316 (Stat Ann 1954 Rev § 28.548). His defense was alibi. The jury convicted him of first-degree murder. He was sentenced and he appeals.

At trial and after a *Walker* hearing,* the two statements given by defendant were admitted in evidence and read to the jury. On appeal, defendant claims error in the admission of the statement given to the prosecuting attorney because it was involuntary. The basis for the claimed involuntariness is that defendant says he gave the statement so that his pregnant wife could be released by the police to go home.

Whether we apply the "clearly erroneous" standard of *People* v. *Walker* (1967), 6 Mich App 600, or examine the entire record and make an independent determination of the issue of voluntariness as prescribed by *People* v. *Summers* (1968), 15 Mich App 346, we reach the same result. Defendant's statement to the prosecuting attorney was properly admitted in evidence.

Although excerpts from the statement support defendant's assertion of involuntariness as does some

---

* *People* v. *Walker* (On Rehearing, 1965), 374 Mich 331.

of his testimony at the *Walker* hearing, all were uncorroborated, self-serving statements of defendant. Acceptance or rejection of these statements was dependent upon the credibility accorded defendant. When the manner of defendant's apprehension, his possession of the gun used in the killing and his attempt to get rid of it, his admittedly false first statement, the unrefuted testimony that defendant's wife was not in custody or charged with anything are considered, we find defendant no more credible than did the trial judge.

During the cross-examination of defendant by the prosecuting attorney, the former was asked, "When you were arrested, where did you get that car you were driving?" Defendant replied, "That car? I stoled that car." Defense counsel objected and requested to discuss the matter in the absence of the jury. The jury was excused and defendant moved for a mistrial. In defendant's statement to the prosecuting attorney, there were references to the stolen car, but the judge had stricken them before that statement was read to the jury.

On this record, defendant properly argues that this is not an instance of inadvertance but a deliberate attempt by the prosecuting attorney to get before the jury inadmissible testimony, namely: proof of a separate and distinct crime with which defendant had never been charged. The trial judge denied the motion for mistrial, permitted the answer to stand and permitted further cross-examination with respect to the stolen car. Before any further testimony was taken, however, the trial judge instructed the jury that any evidence with respect to other offenses was not pertinent to defendant's guilt but was only relevant to the jury's evaluation of defendant's credibility. Defendant claims this was reversible error.

The question for decision is not the validity of the general rule that evidence which shows or tends to show that the accused has committed another crime wholly independent of, and unconnected with, that for which he is on trial, is irrelevant and inadmissible. *People* v. *Lundberg* (1961), 364 Mich 596. The question is does every violation of that rule require automatic reversal?

We think not. By statute, CL 1948, § 769.26 (Stat Ann 1954 Rev § 28.1096), appellate reversal of a jury verdict or the grant of a new trial is restricted to those cases where, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.

By rule, GCR 1963, 529.1, no error in the admission of evidence is ground for granting a new trial or for setting aside a verdict unless refusal to do so appears to be inconsistent with substantial justice.

We do not say that the foregoing statute and rule are cure-alls for every error of the type here complained of. We do say that each requires an appellate court to review the whole case and in context with that review determine if the error complained of resulted in a miscarriage of justice or if refusal to hold that the error is reversible error is inconsistent with substantial justice.

We have reviewed this record as the statute and rule require, and we are unable to find a miscarriage of justice or any inconsistency with substantial justice if we uphold the trial court. This is not to say that we condone the practice of the prosecuting attorney nor the action of the trial court in sustaining that practice. It is to say that on this record we cannot say the error was reversible.

On direct examination, defendant testified to playing the numbers, shooting craps, patronizing blind

pigs and dealing in illicit guns. On cross-examination, before the error here complained of, he admitted he carried concealed weapons. His criminal status and untruthfulness were well established by his own testimony prior to the testimony regarding the stolen car. The evidence of guilt was overwhelming and the only evidence supporting defendant's alibi was his own testimony.

Finally, defendant claims reversible error because the prosecuting attorney brought out on cross-examination of the defendant that defendant received a dishonorable discharge from the army. We find it unnecessary to determine whether admission of such evidence was error. Assuming *arguendo* that it was error, it was not reversible error on this record under the statute and rule, *supra*.

Affirmed.

All concurred.