**Thomas W. TUCKER, Petitioner,**

v.

**Perry JOHNSON, Warden, State Prison of Southern Michigan, Respondent.**

**Civ. A. No. 37553.**

United States District Court,
E. D. Michigan, S. D.

Dec. 22, 1972.

Kenneth M. Mogill, Detroit, Mich., for petitioner.

Frank J. Kelley, Atty. Gen., Peter Houk, Asst. Atty. Gen., Lansing, Mich., for respondent.

## OPINION

RALPH M. FREEMAN, District Judge.

This is a petition for a writ of habeas corpus filed by Thomas W. Tucker, an inmate of Southern Michigan Prison, serving a twenty to forty-year sentence for the crime of rape following conviction by a jury in a Michigan State Court. He has exhausted all available state remedies.

On April 19, 1966, Marion Corey was found tied, gagged and partially disrobed in her home by a friend, Luther White. She had been severely beaten and was incoherent. She was 43 years old and lived alone. She has never recalled what happened to her and has never identified the petitioner or anyone else as her assailant.

When White arrived, he discovered a dog inside the house. Later the dog was seen outside the house. Police followed it to petitioner's house where it curled up on the porch. Questioning of the neighbors revealed that the dog belonged to petitioner and his parents who lived in the house. On the basis of this information, petitioner was picked up by police.

When petitioner was taken to police headquarters, scratches were observed on his face and blood was found on his clothing. He told the police that the scratches and blood were caused by a goose that he had killed. At trial his work foreman testified that petitioner had told him the same story. However, there was testimony that tests conducted on the blood stains on his clothing indicated that it was human blood.

Petitioner was interrogated by the police after his arrest. Although they warned him that he had the right to remain silent, they omitted any statement of his right to court-appointed counsel. During the interrogation, petitioner stated that at the time of the crime he was with a friend, Robert Henderson. The police attempted to confirm this alibi and contacted Henderson who told police that he was not with petitioner at the time in question. In fact, Henderson told police that when petitioner came to his house later in the day of April 19, his face was covered with scratches. When Henderson inquired of petitioner "if he got hold of a wild one or something," petitioner replied, "Something like that." Henderson waited a few minutes and asked petitioner who it was. Petitioner responded that it was "some woman lived the next block over. She is a widow woman—in her thirties or something."

On the trial of the case, the statements made by defendant to the police were not admitted because they were held to have been taken in violation of Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966). The interrogation on April 19, 1966 preceded the *Miranda* decision. But petitioner's trial was subsequent to the rendering of the opinion in *Miranda* on June 13, 1966, and in Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), the court held *Miranda* to be applicable to trials commencing subsequent to that date. Thus, the *Miranda* decision was applicable to statements taken from petitioner and sought to be introduced at trial. Although the trial court excluded those statements, it allowed the introduction of testimony by Henderson on the prosecution's case in chief. The

substance of this testimony is set forth above. The prosecution's knowledge of Henderson was admittedly obtained only through those statements made by petitioner without a proper warning of his constitutional rights.

█ Petitioner now raises an issue thus far not considered by the Supreme Court, namely, does the introduction by the prosecution in its case in chief of testimony of a third person which is admittedly the fruit of an illegally obtained statement by the petitioner, violate petitioner's [Fifth] Amendment rights? Reluctantly, we hold that it does and that, therefore, the writ must be granted.

What we are essentially deciding in this case is whether or not the exclusionary rule shall be extended to cases of this kind. Beginning with Silverthorne Lumber Company, Inc. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920), the Supreme Court has consistently held that the prosecution may not prove its case through illegally obtained evidence or any derivative thereof. As Justice Holmes said in *Silverthorne*, at p. 392, 40 S.Ct. at p. 183:

> The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court, but that it shall not be used at all. Of course this does not mean that the facts thus obtained become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others, but the knowledge gained by the Government's own wrong cannot be used by it in the way proposed.

This rule was expanded in Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), in which case the court held that testimonial evidence elicited from the petitioner, Toy at the time of his illegal arrest was inadmissible and should have been excluded. Thus, the "fruits" of Fourth Amendment violations were held inadmissible. In *Wong Sun*, the court went further and held that narcotics obtained as a result of Toy's statement should have been excluded as a fruit of the original illegal arrest. Thus it is clear that evidence obtained from statements elicited in violation of Fourth Amendment rights is inadmissible.

In United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), the court held an in-court identification by a witness who had viewed defendant-petitioner at a line-up before trial in the absence of counsel in violation of petitioner's Sixth Amendment rights should have been excluded from trial. Of course, if the in-court identification was not based on the previous line-up, but of independent origin, the court said that the in-court identification would be proper. The court remanded the cases to give the prosecution an opportunity to demonstrate that the in-court identification was made independently of the pre-trial line-up. In *Gilbert*, the court went on to say, however, that testimony of witnesses at trial stating that they had identified the defendant at the pre-trial line-up had to be excluded since the line-up of which they testified was illegal. "That testimony is the direct result of the illegal lineup 'come at by exploitation of [the primary] illegality.' *Wong Sun* . . ." (brackets not inserted). Thus it is clear that testimony of third parties which is obtained as the result of a violation of Sixth Amendment rights of the accused, cannot be introduced against the accused at trial.

In a situation involving the Fifth Amendment, the Supreme Court has held that testimony of an accused could not be introduced at a subsequent trial where the testimony at the first trial was induced by use of accused's confession taken in violation of the Fifth Amendment. Thus, in Harrison v. United States, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968), the court said, "[T]he petitioner testified [at trial] only after the Government had illegally intro-

duced into evidence three confessions, all wrongfully obtained, and the same principle that prohibits the use of confessions so procured also prohibits the use of any testimony impelled thereby—the fruit of the poisonous tree, to invoke a time-worn metaphor." Citing *Silverthorne Lumber, supra*. The court noted, however, in footnote 9 on page 223, 88 S.Ct. on page 2010, that,

> We have no occasion in this case to canvass the complex and varied problems that arise when the trial testimony of a witness other than the accused is challenged as "the evidentiary product of the poisoned tree."

The case described in the footnote is precisely the case before this Court.

On the basis of these cases, this Court finds that the testimony of Henderson should have been excluded from petitioner Tucker's trial. We find no distinction between the value placed upon the Fourth, Fifth and Sixth Amendments. Thus, if testimonial fruits of violation of the Fourth and Sixth Amendments may not be introduced into evidence at trial, testimonial fruits obtained from violations of Fifth Amendment rights should also be inadmissible.

We are aware that the Supreme Court has indicated in the case of Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), that *Miranda* does not prevent all uses of a statement taken without the required warning. In *Harris*, the court held that statements taken in violation of *Miranda*, although inadmissible on the prosecution's case in chief, could be used on cross-examination of the defendant for purpose of impeaching his credibility. But the court seemed quite concerned with the fact that no use of the statements was made during the prosecution's case in chief. Thus, whatever inroads have been made on the collateral uses of *Miranda*, it is nevertheless clear from *Harris* that what the prosecution does on its case in chief will still be carefully scrutinized.

■ The purpose of the exclusionary rule of course is to deter illegal police conduct and to prevent the acquisition of evidence through the violation of a defendant's constitutional rights. Justice White argued in his dissent in *Harrison* that the *Miranda* rule excluding all statements procured in custody without adequate warning is so clear and so strong that no additional deterrent was necessary under the facts of that case. It could be argued in our case that no officer would chance violating *Miranda* in the hope of obtaining leads to other inculpatory evidence.

But we are not impressed with this argument. Whatever the motivation of a government agent in failing to warn a defendant, the government should not be allowed to benefit from the violation of the defendant's rights.

■ We note that the defendant's statement to the police which led to the discovery of Henderson was basically exculpatory in nature. In fact, it constituted an alibi that the police were duty bound to investigate. Nevertheless, both exculpatory and inculpatory statements are covered by *Miranda*, 384 U.S. at 476–477, 86 S.Ct. 1602. Moreover, as pointed out by the Supreme Court in *Wong Sun*, 371 U.S. at 487, 83 S.Ct. at 417, although the statement was exculpatory, it "turned out to be incriminating, for [it] led directly to the evidence which implicated [petitioner]." Thus, we find the exculpatory nature of these statements to be irrelevant.

Of course, the statements excluded in *Wong Sun* and *Harrison* were those of the defendants whose rights were violated. But in *Wade* and *Gilbert* the testimony excluded was that of third persons. Thus the fact that a third person's testimony as opposed to petitioner's testimony is at issue is not significant. The testimony is no less the result of the illegal interrogation merely because it was made by a third party.

■ Having determined that the testimony in question was inadmissible at petitioner's trial, we must nevertheless consider whether or not this error was harmless beyond a reasonable doubt.

Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). We have read the transcript of petitioner's trial and conclude that Henderson's testimony was crucial to the prosecution's case. The error in receiving this testimony was not harmless beyond a reasonable doubt.

For these reasons, it is hereby ordered that the writ be and is hereby granted and petitioner shall be released from custody within ninety (90) days from this date unless a new trial is commenced within that time.