PEOPLE v ROBINSON

CRIMINAL   LAW—EVIDENCE—ADMISSIBILITY—INVOLUNTARY   STATE-
MENTS.

Any evidence secured by the police as a result of a defendant's
involuntary statements is inadmissible and any witness whose
identity was discovered as a result of those statements, or any
physical evidence developed from them, may not be admitted
upon the defendant's trial; upon trial, the prosecution has the
affirmative burden of demonstrating that all evidence which it
seeks to introduce was in fact developed from a source wholly
independent of the defendant's involuntary statements.

Appeal from Recorder's Court of Detroit, Joseph
A. Gillis, J. Submitted Division 1 March 16, 1973,
at Detroit. (Docket Nos. 15630–15631.) Decided
June 28, 1973. Leave to appeal denied, 390 Mich
793.

Michael M. Robinson was charged with first-de-
gree murder. Motions by defendant to suppress
testimony and evidence and to disqualify the pre-
trial judge were denied. Defendant appeals by
leave granted. Reversed in part, affirmed in part,
and remanded with instructions.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Dominick R. Carnovale,*
Chief, Appellate Department, and *Leonard Mey-
ers,* Assistant Prosecuting Attorney, for the people.

*James L. Feinberg,* Legal Aid and Defender

REFERENCE FOR POINTS IN HEADNOTE
29 Am Jur 2d, Evidence §§ 529, 531, 537, 542–554, 582, 619.

Association of Detroit *(Arthur J. Tarnow,* of counsel), for defendant on appeal.

Before: FITZGERALD, P. J., and V. J. BRENNAN and O'HARA,* JJ.

V. J. BRENNAN, J. Defendant was convicted of first-degree murder (MCLA 750.316; MSA 28.548) by a jury in Detroit Recorder's Court. That conviction was subsequently affirmed by another panel of this Court *(People v Michael Robinson,* 23 Mich App 397; 178 NW2d 804 [1970]). Our Supreme Court took a contrary view, reversed this Court, set aside defendant's conviction, and remanded the case for a new trial *(People v Robinson,* 386 Mich 551, 558; 194 NW2d 709, 711 [1972]). In their opinion, the Supreme Court stated they were reversing defendant's conviction because they were "left with an abiding conviction that the [defendant's] statements were not voluntary and hence not admissible". On remand, the defendant moved a judge of the Recorder's Court to suppress testimony and evidence derived from the involuntary statements, and also moved to disqualify the pretrial judge. Both motions were denied. This Court then granted defendant's motion for leave to file an interlocutory appeal and also stayed proceedings in the court below pending our disposition of that appeal.

Defendant phrases his first argument, that evidence derived by the police from his involuntary statements is inadmissible, in terms of the "fruit of the poisonous tree doctrine", relying on *Wong Sun v United States,* 371 US 471; 83 S Ct 407; 9 L Ed 2d 441 (1963), and *Silverthorne Lumber Co v*

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

*United States,* 251 US 385; 40 S Ct 182; 64 L Ed 319; 24 ALR 1426 (1920).

In *Mapp v Ohio,* 367 US 643; 81 S Ct 1684; 6 L Ed 2d 1081; 84 ALR 2d 933 (1961), Mr. Justice Clark, writing for the majority, traced the history of this exclusionary rule. It was not until *Weeks v United States,* 232 US 383; 34 S Ct 341; 58 L Ed 652 (1914), that the United States Supreme Court held that evidence acquired in violation of the Fourth Amendment was inadmissible in a Federal prosecution. However, in *Wolf v Colorado,* 338 US 25; 69 S Ct 1359; 93 L Ed 1782 (1949), when first confronted with the question, the Supreme Court refused to require exclusion from state prosecutions of evidence seized in violation of the Fourth Amendment. The *Mapp* Court then proceeded to overturn *Wolf,* quoting the purpose of the exclusionary rule from *Elkins v United States,* 364 US 206, 217; 80 S Ct 1437, 1444; 4 L Ed 2d 1669, 1677 (1960), as being "to deter—to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it". Thus "exclusion" has not always been required by the Fourth Amendment; rather, exclusion has been adopted by the courts as a means to compel compliance, to prevent the deterioration of the Fourth Amendment guarantee to "a form of words". *Silverthorne, supra,* at 251 US 392; 40 S Ct 183; 64 L Ed 321; 24 ALR 1428.

But the defendant's complaint in the case before us is not that his rights under the Fourth Amendment were violated. According to our Supreme Court, two "involuntary" statements were used in evidence against the defendant. The use of involuntary admissions in a criminal prosecution is prohibited by the *Fifth Amendment* privilege against self-incrimination.

"In criminal trials, in the courts of the United States, wherever a question arises whether a confession is incompetent because not voluntary, the issue is controlled by that portion of the fifth amendment to the constitution of the United States commanding that no person 'shall be compelled in any criminal case to be a witness against himself.'" *Bram v United States,* 168 US 532, 542; 18 S Ct 183, 187; 42 L Ed 568, 573 (1897).

While the exclusionary rule grew and developed as a necessary, but nevertheless extrinsic, adjunct to the Fourth Amendment, it has always been an intrinsic part of the Fifth Amendment. As one commentator stated:

"The 'fruit of the poisonous tree' doctrine developed as a means of effectuating fourth amendment guarantees by excluding evidence obtained derivatively as well as that obtained directly through an illegal search or seizure.

\* \* \*

"On the other hand, the gravamen of a constitutional wrong under the fifth amendment is the use of a defendant's coerced testimony against him in a criminal proceeding, not the mere act of compelling him to speak; *the fifth amendment exclusionary rule is an essential element of the constitutional right, not just a means of enforcing the right."* The Supreme Court, 1967 Term, 82 Harv L Rev 221–222 (1968). (Emphasis added.)

In an early expression by the United States Supreme Court of the principle that evidence obtained in violation of the Fifth Amendment is inadmissible is found in *Counselman v Hitchcock,* 142 US 547, 564–565; 12 S Ct 195, 198–199; 35 L Ed 1110, 1114–1115 (1892). That case involved the validity of a Federal immunity statute, and the Court was required to delineate the extent of the

Fifth Amendment privilege against self-incrimination. The holding of the Court is as follows:

"It remains to consider whether section 860 of the Revised Statutes removes the protection of the constitutional privilege of Counselman. That section must be construed as declaring that no evidence obtained from a witness by means of a judicial proceeding shall be given in evidence, or in any manner used against him or his property or estate, in any court of the United States, in any criminal proceeding, or for the enforcement of any penalty or forfeiture. It follows that any evidence which might have been obtained from Counselman by means of his examination before the grand jury could not be given in evidence nor used against him or his property in any court of the United States, in any criminal proceeding, or for the enforcement of any penalty or forfeiture. This, of course, protected him against the use of his testimony against him or his property in any prosecution against him or his property, in any criminal proceeding, in a court of the United States. But it had only that effect. *It could not, and would not, prevent the use of his testimony to search out other testimony to be used in evidence against him or his property, in a criminal proceeding in such court. It could not prevent the obtaining and the use of witnesses and evidence which should be attributable directly to the testimony he might give under compulsion, and on which he might be convicted, when otherwise, and if he had refused to answer, he could not possibly have been convicted.*

"The constitutional provision distinctly declares that a person shall not 'be compelled in any criminal case to be a witness against himself,' and *the protection of section 860 is not co-extensive with the constitutional provision.* Legislation cannot detract from the privilege afforded by the constitution. It would be quite another thing if the constitution had provided that no person shall be compelled in any criminal case to be a witness against himself, unless it should be provided by statute that criminating evidence extracted from a witness against his will should not be used against him. But a mere act of congress cannot amend the constitution,

even if it should ingraft thereon such a proviso." (Emphasis added.)

The *Counselman* Court made its position even clearer by citing with approval the following language from *Emery's Case,* 107 Mass 172, 182 (1871), at 142 US 585; 12 S Ct 206; 35 L Ed 1122:

"It is a reasonable construction, we think, of the constitutional provision [privilege against self-incrimination], that the witness is protected *'from being compelled to disclose the circumstances of his offense, the sources from which, or the means by which, evidence of its commission, or of his connection with it, may be obtained, or made effectual for his conviction, without using his answers as direct admissions against him.'"* (Emphasis added.)

Thus, on its first opportunity to so rule, the Supreme Court held that evidence, primary or derivative, obtained in violation of the Fifth Amendment was inadmissible at a subsequent prosecution. This principle, (recognized in Michigan: *In re Watson,* 293 Mich 263; 291 NW 652 [1940]) was most recently reaffirmed by the United States Supreme Court in *Kastigar v United States,* 406 US 441, 444–445; 92 S Ct 1653, 1656; 32 L Ed 2d 212, 216–217 (1972). The Court therein stated that,

"[t]he privilege [against self-incrimination] reflects a complex of our fundamental values and aspirations, and marks an important advance in the development of our liberty. It can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory; *and it protects against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used.* This Court has been zealous to safeguard the values that underlie the privilege." (Footnotes omitted.) (Emphasis added.)

While the Court in *Kastigar* held that "use" immunity was sufficient to protect a witness compelled to testify, they also discussed the proper procedure upon a trial of a witness previously compelled to give incriminating testimony. The Court imposed "on the prosecution the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony". 406 US 460.

The Court went on to make an analogy between a grant of immunity and a coerced confession (which is precisely the case before us now):

"The statutory proscription is analogous to the Fifth Amendment requirement in cases of coerced confessions. A coerced confession, as revealing of leads as testimony given in exchange for immunity, is inadmissible in a criminal trial, but it does not bar prosecution. Moreover, a defendant against whom incriminating evidence has been obtained through a grant of immunity may be in a stronger position at trial than a defendant who asserts a Fifth Amendment coerced confession claim. One raising a claim under this statute need only show that he testified under a grant of immunity in order to shift to the government the heavy burden of proving that all of the evidence it proposes to use was derived from legitimate independent sources. *On the other hand, a defendant raising a coerced-confession claim under the Fifth Amendment must first prevail in a voluntariness hearing before his confession and evidence derived from it become inadmissible.*" (Footnotes omitted.) (Emphasis added.) 406 US 461–462.

Thus while the defendant's position is well taken, his reasoning is erroneous. Instead of urging us to establish a Fifth Amendment branch of the "fruit of the poisonous tree" doctrine he should have been arguing that such a branch was

always present as an essential element of the Fifth Amendment guarantee.[1]

We are therefore compelled to agree with the defendant that any evidence secured as a result of his involuntary statements is inadmissible. Any witness whose identity was discovered as a result of those statements, or any physical evidence developed therefrom, may not be admitted upon defendant's trial. Upon his trial, the prosecution will have the affirmative burden of demonstrating that all evidence which it seeks to introduce was in fact developed from a source wholly independent of defendant's involuntary statements. Any other holding would be contrary to the clear meaning given the Fifth Amendment by the United States Supreme Court.

Defendant's second argument, regarding the disqualification of the pretrial judge, is without merit.

The ruling of the trial court denying defendant's motion to suppress is reversed, and the case remanded for proceedings not inconsistent with this opinion.

Reversed in part, affirmed in part; remanded for proceedings not inconsistent with the opinion.

All concurred.

---

[1] Defense counsel, in his error, is in good company. See *People v Tucker,* 19 Mich App 320; 172 NW2d 712 (1969), *aff'd* 385 Mich 594; 189 NW2d 290 (1971), writ of habeas corpus granted *Tucker v Johnson,* 352 F Supp 266 (ED Mich, 1972).