COMMONWEALTH vs. MICHAEL H. WHITE (No. 3).

Suffolk.    April 2, 1974. — May 13, 1974.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & WILKINS, JJ.

*Constitutional Law*, Admissions and confessions. *Identification.*
*Error*, Whether error harmful.

Testimony by the victims in criminal cases identifying the defendant at
   a lineup was properly not suppressed on the asserted ground that the
   victims were discovered through admissions illegally obtained by the
   police from the defendant where the judge found that the victims
   themselves had reported the crimes to the police and the defendant
   had not furnished their names and that, although the police had used
   the information given by the defendant in checking their files, "the
   identification of the defendant in the line-up was not the product of
   the defendant's admissions in any proper sense of that word." [313-
   316]
On the record, the defendant in criminal cases was not prejudiced as a
   matter of Federal constitutional law by a refusal to suppress certain
   identification evidence where the sentences imposed on convictions
   were concurrent with sentences held valid by this court in other cases
   involving the same defendant. [316]

TWO INDICTMENTS found and returned in the Superior Court on September 15, 1971.

Pre-trial motions were heard by *Moynihan*, J., and the cases were tried before *Connolly*, J.

*Kay Hodge* for the defendant.

*Louis M. Nordlinger*, Assistant District Attorney, for the Commonwealth.

BRAUCHER, J. The defendant appeals under G. L. c. 278, §§ 33A-33G, from convictions on two indictments for armed robbery (No. 58905 for robbery of Leo Fraser on July 4, 1971, and No. 58985 for robbery of Victor. Simonians on

July 12, 1971). He argues two points. The first, relating to the dismissal of juvenile proceedings, has been disposed of adversely to the defendant in another case involving the same defendant. *Commonwealth* v. *White (No. 1), ante,* 301. The second relates to the suppression of testimony by witnesses claimed to have been discovered as a direct result of information illegally obtained from the defendant. We hold that the refusal to suppress the testimony does not require reversal of the convictions, and affirm.

We summarize the findings and rulings made by the Superior Court judge in denying the defendant's motion to suppress, so far as they relate to this case.[1] After the arrest and interrogation of the defendant on July 17, 1971, he appeared in the Boston Juvenile Court on Monday, July 19, 1971, and arrangements were made for a lineup identification procedure. The defendant, represented by two attorneys, was placed in a lineup on July 26, 1971, and viewed by eleven witnesses. Five witnesses, including the victims of the two robberies involved in this case, identified the defendant as the man who robbed them. The defendant did not furnish the police with the names of the victims; the victims themselves had reported the robberies to the police and the latter had in their files information as to the details of the robberies.

The judge ordered the suppression of statements made by the defendant to the police on July 17 and 18, 1971, but refused to suppress the lineup identifications. He said, "The only reason assigned by the defendant for seeking to suppress this identification evidence is that the names of the victims who identified the defendant were obtained as a result of the defendant's prior admissions. . . . The police used the information given by the defendant in checking their files but the identification of the defendant in the lineup was not the product of the defendant's admissions in any proper sense of that word."

After conviction by a jury on both indictments on May

---

[1] Additional findings and rulings are summarized in *Commonwealth* v. *White (No. 2), ante,* 307.

14. 1973, the defendant was sentenced to five year probationary periods to begin on release from indeterminate sentences to Massachusetts Correctional Institution, Concord (see *Commonwealth* v. *White* [*No. 1*], *ante*, 301). The probationary periods are concurrent with each other and with the five to seven-year period imposed under Indictment No. 58911 (see *Commonwealth* v. *White* [*No. 2*], *ante*, 307).

In denying the motion to supress, the judge found that the police obtained statements from the defendant without complying with the requirements of *Miranda* v. *Arizona*, 384 U. S. 436, 475 (1966). The defendant contends that this established a "primary illegality," that the police use of information given by the defendant in checking their files was " 'exploitation of that illegality,' " and that the identifications by the victims were not obtained " 'by means sufficiently distinguishable to be purged of the primary taint.' " See *Wong Sun* v. *United States*, 371 U. S. 471, 488 (1963); *Commonwealth* v. *Flaherty*,        Mass. App. Ct.    ,        (1973).[a]

The Supreme Court has not made clear the extent to which a witness other than the defendant may be forbidden "fruit of the poisonous tree" where *Miranda* requirements have been violated. See *Harrison* v. *United States*, 392 U. S. 219, 223, n. 9 (1968); George, The Fruits of Miranda: Scope of the Exclusionary Rule, 39 U. of Colo. L. Rev. 478, 486-492 (1967); Pitler, "The Fruit of the Poisonous Tree" Revisited and Shepardized, 56 Cal. L. Rev. 579, 621-630 (1968). We cannot say with confidence that the testimony of such a witness need never be suppressed. *Tucker* v. *Johnson*, 352 F. Supp. 266 (E. D. Mich. 1972), affd. 480 F. 2d 927 (6th Cir. 1973), cert. granted sub nom. *Michigan* v. *Tucker*, 414 U. S. 1062 (1973). It seems to be established that the testimony of such a witness may in some circumstances be admissible even though it might never have become available but for a "primary illegality." *Brown* v. *United States*, 375 F. 2d 310, 313-315 (D. C. Cir. 1966), cert. den. 388 U. S. 915 (1967). *People* v. *Dannic*, 30 App. Div. 2d

---

[a] 295 N. E. 2d 698, 701.

(N. Y.) 679 (1968). *People* v. *Stadd*, 32 App. Div. 2d (N. Y.) 940 (1969). Cf. *Lockridge* v. *Superior Court of Los Angeles County*, 3 Cal. 3d 166, 170-171 (1970). But the lines of distinction to be drawn have not been clearly defined.

We think attention is required to the primary purpose of the exclusionary rule, the deterrence of illegal police conduct, and to the adverse impact of unjust acquittals on the public interest. In the present case it is fairly arguable that the public interest would have been better served if the police had entirely abstained from any communication with the defendant after his arrest for the Sass holdup (see *Commonwealth* v. *White* [*No. 2*], *ante*, 307). He could then have been convicted, as indeed he was, of armed assault on Sass with intent to rob, and sentenced to the State prison for not more than twenty years. G. L. c. 265, § 18. The public interest may have been served by using him to clear up numerous other taxicab robberies, but it is not at all clear that any public interest was served by multiple indictments, resulting in numerous concurrent sentences. We doubt that a dismissal of the two indictments involved in the present case would have any significant deterrent effect on anyone or any adverse effect on the public interest.

On the other hand, these cases involve numerous serious crimes. The police appear to have treated the defendant with dignity and respect. They tried very hard, though without success, to observe legal requirements. They used the defendant's statements, not to discover unknown victims, but to eliminate possible victims from consideration. They enlisted the defendant's enthusiastic coöperation in distinguishing the robberies he had committed from those he had not, and that coöperation may have been an appropriate first step toward rehabilitation. He was fairly tried, with scrupulous attention to his constitutional claims, and was sentenced with restraint. He was confined about twenty months awaiting trial, but the delay seems largely attributable to the diligence of his counsel in pursuing procedural issues.

The robberies here in issue took place within two weeks before the arrest of the defendant for a similar robbery. We read the judge's findings as implying that the identity of

the victims would probably have been discovered by the police and associated with the defendant irrespective of his statements, and that exclusion of the victims' testimony was not necessary to deter violations of constitutional rights. Cf. Am. Law Inst., Model Code of Pre-Arraignment Procedure, § 150.4 (Tent. draft No. 6, 1974). In all the circumstances, we believe the judge properly refused to suppress their testimony. Cf. *United States* v. *Nagelberg,* 434 F. 2d 585, 587 (2d Cir. 1970), cert. den. sub nom. *Nagelberg* v. *United States,* 401 U. S. 939 (1971); *United States* v. *Evans,* 454 F. 2d 813, 817-819 (8th Cir. 1972), cert. den. sub nom. *Evans* v. *United States,* 406 U. S. 969 (1972).

In any event, the sentences imposed on the defendant in this case were concurrent with sentences we have held valid in the other two cases involving the same defendant. As matter of Federal constitutional law, the defendant was therefore not prejudiced, and we are not required to reverse the convictions. *Green* v. *United States,* 274 F. 2d 59, 61 (1st Cir. 1960), affd. 365 U. S. 301, 306 (1961).

*Judgments affirmed.*