*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MARCUS DARNELL FORD,

        Defendant-Appellant.

UNPUBLISHED
March 26, 2019

No. 336500
Wayne Circuit Court
LC No. 16-001443-01-FC

Before: JANSEN, P.J., and METER and STEPHENS, JJ.

PER CURIAM.

Defendant appeals as of right his convictions for felony murder, MCL 750.316(b), torture, MCL 750.85, and unlawful imprisonment, MCL 750.349(b). He was sentenced to life for the felony murder and torture convictions, and 10 to 15 years' imprisonment for the unlawful imprisonment conviction. We affirm.

## I. BACKGROUND

Defendant's convictions arise from the murder of Ali Beasley, his mother's boyfriend, in the early morning hours of January 5, 2015 in Detroit, Michigan. Beasley was discovered by first responders in a field next to an abandoned home and taken to a hospital at approximately 3:00 a.m. on January 5 where he died there some seven hours later.

## II. DYING DECLARATIONS

Defendant challenges Beasley's statements to first responders that identified defendant as his assailant on multiple grounds. In his attorney's brief, he argues the statements were inadmissible hearsay that the trial court erred in admitting and that counsel was ineffective for not moving to suppress. In his Standard 4 brief, defendant argues that the statements were insufficient evidence of identification to support the district court bind over and were later used at trial by firefighters Charles Dabrowski and William Belser to commit perjury.

## A.  HEARSAY

### 1.  STANDARDS OF REVIEW

"The decision to admit evidence is within a trial court's discretion, which is reviewed for an abuse of that discretion." *People v Bynum*, 496 Mich 610, 623; 852 NW2d 570 (2014). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). "When the decision involves a preliminary question of law however, such as whether a rule of evidence precludes admission, we review the question de novo." *People v Mardlin*, 487 Mich 609, 614; 790 NW2d 607 (2010).

Defendant raised his ineffective assistance of counsel claim in the trial court by motion for a new trial and evidentiary hearing and it was denied. This Court further denied defendant's motion to remand for an evidentiary hearing. It is our opinion that the record contains sufficient evidence to rule on defendant's claim. Proceeding, we review "de novo whether defense counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms and whether, without the error, the result of the proceedings would have been different." *People v McFarlane*, ___ Mich App ___, ___; ___ NW2d ___ (2018).

### 2.  ANALYSIS

Defendant first argues that Beasley's statements identifying him to first responders as the person responsible for his condition were hearsay and their admission denied him a fair trial. Defendant further argues that the evidence at trial did not demonstrate that Beasley's statements were dying declarations because the statements were not made with the belief that death was imminent, were in response to questions from law enforcement, and Beasley actually did not pass until seven hours later. We disagree.

Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). "Hearsay is generally prohibited and may only be admitted at trial if provided for in an exception to the hearsay rule." *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010); MRE 802. The rule at issue here is MRE 804(b)(2), commonly known as the dying declaration exception. The rule provides that in a prosecution for homicide, "a statement by a declarant is admissible if the declarant is unavailable as a witness and the statement was made 'while believing that the declarant's death was imminent, concerning the cause or circumstances of what the declarant believed to be impending death.' " *People v Stamper*, 480 Mich 1, 4; 742 NW2d 607 (2007) quoting MRE 804(b)(2). "[I]t is not necessary for the declarant to have actually stated that he knew he was dying in order for the statement to be admissible as a dying declaration." *People v Siler*, 171 Mich App 246, 251; 429 NW2d 865 (1988). The court may consider " 'the circumstances under which the dying declaration was taken to show whether it was really taken when the declarant was under the conviction of approaching and inevitable death....' " *People v Fritch*, 210 Mich 343, 347; 178 NW 59 (1920) quoting *People v Christmas*, 181 Mich 634, 646; 148 NW 369 (1914). "If the surrounding circumstances clearly establish that the declarant was *in extremis* and believed that his death was impending, the court may admit statements

concerning the cause or circumstances of the declarant's impending death as substantive evidence under MRE 804(b)(2)." *Stamper*, 480 Mich at 4.

Testimony from first responders clearly established that Beasley was in extremis at the time he provided statements identifying the defendant as his assailant. They testified that Beasley was found kneeling in an open field. His feet and hands were bound with copper wire and he looked as if he had been beaten. He had multiple injuries to his face. Blood was pooling at his jaw. He had been stabbed and had brain matter coming out of his ears. He collapsed when firefighters arrived. Officer Abery Thomas testified that after stating his name, Beasley just began to tell what happened to him. Officer Thomas testified, "He told me that he was set up. And I asked him how he was set up. And he told me Marcus Ford set him up. That's who did this to him. I also asked him how was he – how did he know Marcus Ford. And he said that he was dating his mother, Marcus Ford's mother." Officer Belser testified that Beasley told him that the person who did this to him was in an SUV, his name was Marcus Ford, and Marcus Ford was "his girlfriend's son." Sgt. Dabrowski testified that he heard Beasley say, "Marcus Ford did this to me" and spell out Marcus Ford's name. Officer Thomas followed up with pointed questions and learned that Marcus Ford was a thirty-year-old black male, drove an SUV, assaulted Beasley because he thought Beasley assaulted his mother, had put Beasley in the back of a trunk, and brought him to the field.

The declarant is not required to state that he believes he is going to die. *Siler*, 171 Mich App at 251. Taken together, Beasley's physical condition and statements to law enforcement demonstrated that he was under the conviction of approaching death. Beasley's urgency and mission to identify defendant came out in his spontaneous narrative to Officer Thomas of who assaulted him and how it happened. Above all else, Beasley wanted law enforcement to know his assailant's name. Beasley did die some seven hours after making the dying declarations however, defendant presents no case law supporting that this passage of time diminishes the declarant's belief that death was imminent. The court's decision to admit the statements was within the range of principled outcomes.

Defendant also faults his trial counsel for failing to file a pre-trial motion to suppress the same statements from Beasley. "To prevail on a claim of ineffective assistance, a defendant must, at a minimum, show that (1) counsel's performance was below an objective standard of reasonableness and (2) a reasonable probability [exists] that the outcome of the proceeding would have been different but for trial counsel's errors." *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003). At defendant's January 23, 2015 preliminary examination, defense counsel made the hearsay objection during Officer Thomas's testimony that Beasley's statements were not made under the impression of impending death. The court disagreed, and held, "[t]hat he had blood pooling in his mouth; his skin is coming through his clothes; his hands are bound, his body smoldering. He's got blood everywhere. I'm satisfied. Your objection is overruled." Nevertheless, counsel continued to object at trial. He was unsuccessful there as well. Since counsel lodged his objections to the admissible hearsay at both the preliminary examination and at trial, he was not obligated to, also, make a futile attempt to suppress via motion. This Court will not find counsel "ineffective for failing to advance a meritless position or make a futile motion." *People v Henry (After Remand)*, 305 Mich App 127, 141; 854 NW2d 114 (2014).

## B. INSUFFICIENT EVIDENCE TO SUPPORT THE BIND OVER

Defendant additionally challenges Beasley's statements to first responders as insufficient evidence of defendant's identity to support his bind over.

### 1. STANDARD OF REVIEW

We review for an abuse of discretion the district court's decision to bind over. *People v Whipple*, 202 Mich App 428, 431; 509 NW2d 837 (1993). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Unger*, 278 Mich App at 217.

### 2. ANALYSIS

"The district court must bind over a defendant if the evidence presented at the preliminary examination establishes that a felony has been committed and there is probable cause to believe that the defendant committed the crime." *Whipple*, 202 Mich App at 431. Probable cause is a "reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that a person accused is guilty of the offense with which he is charged." *People v Dellabonda*, 265 Mich 486, 490; 251 NW 594 (1933). "At the preliminary examination, the prosecutor is not required to prove each element beyond a reasonable doubt. However, there must be some evidence from which these elements can be inferred." *People v Woods*, 200 Mich App 283, 287-288; 504 NW2d 24 (1993). Magistrates should "not refuse to bind a defendant over for trial when the evidence conflicts or raises reasonable doubt of the defendant's guilt." *People v Yost*, 468 Mich 122, 128; 659 NW2d 604 (2003). In the case of conflicting evidence, "[t]he jury is the sole judge of the facts; its role includes listening to testimony, weighing evidence, and making credibility determinations." *Mardlin*, 487 Mich at 626.

Defendant was bound over on four counts: 1) first-degree murder, 2) felony murder, 3) torture, and 4) unlawful imprisonment.[1] "The elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010); MCL 750.316. "Premeditation and deliberation require sufficient time to allow the defendant to take a second look." *People v Anderson*, 209 Mich App 527, 537; 531 NW2d 780 (1995); MCL 750.316(1)(a). "The elements of felony murder are: (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in M.C.L. § 750.316[.]" *People v Turner*, 213 Mich App 558, 566; 540 NW2d 728 (1995); MCL 750.316(1)(b). The elements of torture are: (1) the intent to cause cruel or extreme physical or mental pain and suffering; (2) the infliction of great bodily injury or severe mental pain or suffering upon another person; and (3)

---

[1] Defendant was also bound over on one count conspiracy to commit murder, but that charge was dismissed at trial.

the victim is within the actor's custody or physical control. MCL 750.85. "A person commits the crime of unlawful imprisonment if he or she knowingly restrains another person under any of the following circumstances: (a) The person is restrained by means of a weapon or dangerous instrument[;] (b) The restrained person was secretly confined[;] [and] (c) The person was restrained to facilitate the commission of another felony or to facilitate flight after commission of another felony." *People v Bosca*, 310 Mich App 1, 18; 871 NW2d 307 (2015); MCL 750.349b. Torture and unlawful imprisonment are enumerated felonies under MCL 750.316(1)(b). "[I]t is well settled that identity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008).

Defendant contends that Officer Thomas's preliminary examination testimony regarding Beasley's identification of defendant was inadmissible because Officer Thomas testified from a "deficient memory" without first having reviewed his report and the statement he recorded in his report did not positively identify defendant as the one who killed Beasley. The record does not support that Officer Thomas's memory failed him. Not once did Officer Thomas testify that he could not remember what Beasley said to him. Officer Thomas simply offered his report and the prosecutor asked that he testify from his memory. Officer Thomas testified that he recalled exactly what Beasley said and then proceeded to testify from memory about his conversation with Beasley. Defendant also argues that Beasley's recorded statement in Officer Thomas's report that "I was set up by Marcus Ford B/M 30" was not a positive statement that identified defendant as Beasley's killer because Beasley used the words "set up" which left open the possibility that another individual actually assaulted Beasley. Defendant's contention flows from a misunderstanding of the felony-murder rule, that when a person "sets in motion a chain of events which were or should have been within his contemplation when the motion was initiated, he should be held responsible for any death which by direct and almost inevitable sequence results from the initial criminal act." *People v Podolski*, 332 Mich 508, 515-516; 52 NW2d 201 (1952). "[W]e have never held that a defendant must participate in the actual killing to be guilty of felony murder." *People v Smith*, 56 Mich App 560, 567; 224 NW2d 676 (1974). Defendant's argument also lacks merit because it ignores the remainder of Officer Thomas's testimony that offered additional positive identification testimony of defendant as having assaulted Beasley. Officer Thomas also testified that Beasley said, "Marcus Ford did this," that Patrick told defendant that Beasley "beat her up" to which Beasley said, "I didn't do that," and that "they made me get in the trunk." Beasley otherwise identified defendant as the one who "did this," i.e. the one who was responsible for his then-current condition, he linked the motive of his assault to defendant, and identified defendant as someone involved in his asportation.

Further omitted from defendant's analysis is the fact that the district court's bind over decision was not based on Officer Thomas's testimony alone, but also upon consideration of the testimonies of Officer Anthony Byrd, Sgt. Todd Eby and defendant's co-defendant Earnest Jackson, Jr. on all four counts charged. Officer Byrd testified that Beasley "was on the ground; he was bloody; burned real bad; still smoldering; still smoking." Officer Byrd testified that he observed Beasley in a field with his hands tied behind his back. This evidence showed Beasley was under extreme physical suffering and restrained in a desolate location. Sgt. Eby testified that during his interview of defendant, defendant said he left his sister's house with Beasley and Jackson. Jackson testified that on January 8, 2015, he gave a sworn statement to officers wherein he stated that defendant confided in him; telling Jackson that he wrapped Beasley in plastic, beat Beasley, killed Beasley, and left Beasley's body not far away from his/defendant's

home. Jackson also testified that he had lied to officers about defendant's involvement and testified that the truth was that he and defendant left Beasley at a party store after learning that Beasley had a gun, because Jackson was on parole and then he dropped defendant off at their cousin's Jeremy's house and went home. The autopsy report that determined Beasley's death was a homicide was also admitted. Jackson's conflicting testimony was not a reason for the court to refuse to bind over defendant. *Yost*, 468 Mich at 128. These statements placed defendant with Beasley on the night of the assault. The court's decision to bind over defendant was not an abuse of discretion where the evidence was sufficient to establish the commission of a felony and probable cause that defendant committed the crimes charged.

Defendant also takes issue with the district court's procedure for finding that Beasley's statements were dying declarations before hearing the statements themselves. The procedure followed by the trial court allowed it to make the determination that the victim was in fear of death before determining which, if any, of the statements made were properly admissible declarations of a person fearing impending death. See *Stamper*, 480 Mich at 4. Defendant also argues that the court erred in not considering the issues of confrontation and indicia of reliability of Beasley's statements before admitting them as dying declarations. Dying declarations do not pose a confrontation issue, however. "[U]nder *Crawford*[2], dying declarations are admissible as an historical exception to the Confrontation Clause." *People v Taylor*, 275 Mich App 177, 183; 737 NW2d 790 (2007). Further, "a hearsay statement is deemed to possess an indicia of reliability when made under specific circumstances that make it more probable than not that the substance of the statement is true." *People v Malone*, 445 Mich 369, 402 n 12; 518 NW2d 418 (1994). "[T]he 'dying declaration' ... exception[ ] to the hearsay rule [is] based on the belief that persons making such statements are highly unlikely to lie." *People v Watkins*, 438 Mich 627, 637; 475 NW2d 727 (1991) (citation omitted). The "statement derives from the permeating influence of the situation in which the declarant finds himself as he utters the statement, and from his general mental condition thereby created, and that any associated statements made around the same time and under the same circumstances can be presumed to absorb and share that trustworthiness." *Id*. The trustworthiness of the dying declaration is therefore, presumed. *Id*.

## C. PERJURY

Defendant also claims that firefighters Dabrowski and Belser committed perjury when they each testified that Beasley spelled out defendant's name and Officer Byrd's report indicated Beasley spelled out his own name, not the defendant's. Defendant argues that the prosecutor committed misconduct by allowing the perjured testimony. "The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *People v Rice*, 235 Mich App 429, 434; 597 NW2d 843 (1999). A prosecutor has "a constitutional obligation to report to the defendant and to the trial court whenever government witnesses lie under oath." *People v Lester*, 232 Mich App 262, 276; 591 NW2d 267 (1998). "Michigan courts have also recognized that the prosecutor may not knowingly use false testimony to obtain a conviction, and

---

[2] *Crawford v Washington*, 541 US 36; 124 S Ct 1354; 158 L Ed 2d 177 (2004).

that a prosecutor has a duty to correct false evidence." *Id*. (Citations omitted). "It is well settled that a conviction obtained through the knowing use of perjured testimony offends a defendant's due process protections guaranteed under the Fourteenth Amendment." *People v Aceval*, 282 Mich App 379, 389; 764 NW2d 285 (2009).

In this case, however, there is no evidence of perjury. The defendant argues basically that an individual in Beasley's condition could not have spelled out a name and that Officer Byrd's failure to report him doing so rendered the identification incredible. According to Officer Byrd's preliminary examination testimony, he was with Beasley for a short time, just to obtain Beasley's name, date of birth and address, but then returned to his patrol car to look up Beasley in the Law Enforcement Information Network (LIEN), and stayed in his patrol car until EMS took Beasley away. Officer Byrd did not testify to being present for Beasley's conversations with other first responders. Defendant was not denied a fair trial in the absence of Officer Byrd's testimony because his testimony would not have precluded, undermined or proved false what Dabrowski and Belser heard during their interviews of Beasley.

## III. JACKSON'S TESTIMONY

Defendant challenges the trial court's admission of Jackson's testimony after Jackson was found an incredible witness in the district court.

### A. ISSUE PRESERVATION

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). This issue is not preserved because defendant did not object to Jackson testifying at trial.

### B. STANDARD OF REVIEW

"The decision to admit evidence is within a trial court's discretion, which is reviewed for an abuse of that discretion." *Bynum*, 496 Mich at 623. "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Unger*, 278 Mich App at 217. We review an unpreserved evidentiary challenge for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 762-763; 597 NW2d 130 (1999). "When the decision involves a preliminary question of law however, such as whether a rule of evidence precludes admission, we review the question de novo." *Mardlin*, 487 Mich at 614.

### C. ANALYSIS

In a January 8, 2015 sworn statement, Jackson told officers that defendant told him "I wrapped that nigger in plastic and beat the shit out of him and he ain't too far away from here." At the February 2017 continued preliminary examination, Jackson appeared as a witness for the defense and testified that his prior statements to law enforcement regarding defendant's involvement were lies. At the end of the preliminary examination, the district court stated that it reasonably believed that Jackson had committed perjury and appointed him counsel. Thereafter, Jackson was offered a plea deal and at trial, testified for the prosecution.

-7-

Certainly, Jackson's testimony was inconsistent. Defendant's argument about this testimony however, goes to the weight of the evidence, not its admissibility. *People v Hintz*, 62 Mich App 196, 203; 233 NW2d 228 (1975). While the district court made the determination that Jackson should be charged with perjury, "[w]itness credibility and the weight accorded to evidence is a question for the [trier of fact][.]" *People v McGhee*, 268 Mich App 600, 624; 709 NW2d 595 (2005). The admission of Jackson's testimony also did not affect defendant's substantial rights where defendant used Jackson's inconsistent testimony to impeach his credibility before the jury.

## IV. CELLULAR PHONE EVIDENCE

Defendant challenges the admission of text messages from his phone on Fourth Amendment grounds, ineffective assistance of counsel, hearsay and perjury.

## A. FAILURE TO CONTEST THE SEIZURE

Defendant first contends counsel was ineffective for not filing a motion to suppress information obtained from defendant's cellular phone because the phone was seized and searched without a warrant and the information obtained from the phone was therefore fruit of the poisonous tree.

### 1. STANDARD OF REVIEW

"To prevail on a claim of ineffective assistance, a defendant must, at a minimum, show that (1) counsel's performance was below an objective standard of reasonableness and (2) a reasonable probability [exists] that the outcome of the proceeding would have been different but for trial counsel's errors." *Ackerman*, 257 Mich App at 455.

### 2. ANALYSIS

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures...." US Const, Am IV. The protection against unreasonable searches and seizures applies to the investigatory and accusatory stage. *Davis v Mississippi*, 394 US 721, 726; 89 S Ct 1394; 22 L Ed 2d 676 (1969). "The burden of asserting and proving facts constituting an illegal search and seizure is upon the defendant moving to suppress the evidence, and where such burden is not sustained, the motion should be denied." *People v Bradley*, 4 Mich App 660, 664-665; 145 NW2d 390 (1966) (citation omitted). "The 'fruit of the poisonous tree' doctrine developed as a means of effectuating fourth amendment guarantees by excluding evidence obtained derivatively as well as that obtained directly through an illegal search or seizure." *People v Robinson*, 48 Mich App 253, 256; 210 NW2d 372 (1973) (citation omitted). The "doctrine seeks to discourage unlawful police practices by depriving the people of advantage flowing from the 'primary illegality.'" *People v Walker*, 27 Mich App 609, 616; 183 NW2d 871 (1970). Therefore, the fruit of the poisonous tree doctrine "presupposes an illegal act." *People v Gunn*, 48 Mich App 772, 778; 211 NW2d 84 (1973). The fruit of the poisonous tree is inapplicable here because defendant's phone was seized incident to a lawful arrest and the phone's contents were searched pursuant to a search warrant.

Sgt. Eby testified that defendant's cellular phone was on his person when he was arrested on January 7 and that it was seized without a warrant. "[T]he validity of a warrantless search and seizure incident to an arrest stands or falls with the validity of the arrest." *People v Wenrich*, 31 Mich App 644, 647; 188 NW2d 102 (1971). "A police officer in Michigan may arrest a person when he has reasonable cause to believe that a felony has been committed and reasonable cause to believe that such person has committed it." *Id*. "When the constitutional validity of an arrest is challenged, the court must determine whether the facts available to the officers at the moment of the arrest would warrant a man of reasonable caution in believing that an offense had been committed." *Id*. At the time of defendant's arrest, officers had reasonable cause to believe that a felony had been committed and that defendant was the one who committed it. Officers originally found Beasley covered in blood, still smoldering from having been set on fire, bound at the hands and feet, and in a field next to a vacant home. At the time of defendant's arrest, Beasley was dead and had identified defendant by name as the one who assaulted him, transported him in a trunk to an abandoned area and set him on fire because defendant thought Beasley had assaulted defendant's mother. Armed with this information, officers had reasonable cause to arrest defendant when he voluntarily appeared at the police station on January 7, 2015. The warrantless seizure of defendant's telephone was therefore incident to the lawful arrest. *Wenrich*, 31 Mich App at 647.

Sgt. Eby further testified that Sergeant Firchau obtained a search warrant on January 8 for the contents of defendant's cellular phone and that defendant's phone was not searched until the warrant was obtained. The record contains the warrant and there is no evidence that any search of the telephone preceded the issuance of the warrant. Therefore, counsel did not have a basis for a pre-trial suppression motion. This Court will not find counsel "ineffective for failing to advance a meritless position or make a futile motion." *Henry*, 305 Mich App at 141.

## B. HEARSAY

In his Standard 4 brief, defendant argues that after the prosecutor dismissed the conspiracy to commit murder charge, Patrick's text messages to defendant returned to being hearsay for which there was no exception. We disagree.

At defendant's January 23, 2015 preliminary examination, defendant objected to the prosecutor's attempt to introduce Patrick's text messages to defendant on hearsay grounds and the district court sustained the objection. At defendant's February 10, 2016 preliminary examination on the added charge of conspiracy to commit homicide, defendant again objected to the admission of Patrick's text messages on hearsay grounds when the prosecutor sought their admission as a preliminary matter. There, the prosecutor offered the text messages for two purposes: 1) under MRE 803(3) to show defendant's state of mind, specifically that Patrick's messages motivated defendant to kill Beasley, and 2) as substantive evidence of a co-conspirator exception where Patrick directed defendant to assault Beasley and the text messages were statements in furtherance of the conspiracy. The court found the text messages admissible for both offered purposes. Once the conspiracy basis for admission was eliminated due to the dismissal of the charge, the "effect on the receiver" basis remained and we find it valid. "'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). "An out-of-court statement introduced to show its effect on a listener, as opposed to proving the truth of the

matter asserted, does not constitute hearsay under MRE 801(c)." *People v Gaines*, 306 Mich App 289, 306-307; 856 NW2d 222 (2014). These statements are "not offered for a hearsay purpose because [their] value does not depend upon the truth of the statement." *People v Lee*, 391 Mich 618, 642; 218 NW2d 655 (1974).

The forensic extraction of defendant's text messages showed that defendant received text messages on January 4, 2015, beginning at 11:18 p.m. from someone he named "mom" in his phone that read, "I want him gone, but have to pick a better time, he has weapons, don't say anything," "please play nice for me," and "if he knows he would hurt me or worst [sic] to me, he threatened me and everyone I love." At the same time these messages were received, by defendant's account, he went to where Patrick and Beasley were and left with Beasley and Jackson. By Jackson's account, defendant thereafter assaulted Beasley. An hour and half after the last text message, Beasley was found burned and tied up on Liberal Street. In arguing that the text messages had an effect on defendant, the prosecutor did not seek to prove that the text messages were from Patrick or the veracity of the text contents. Rather, the messages were relevant to show that around the same time that they were being sent to defendant, defendant took certain actions in response. The court did not abuse its discretion in finding the text messages were not hearsay and in admitting the messages for the limited purpose of showing their effect on the listener.

## C. PERJURY

Defendant also argues that Sgt. Eby and Detective Rutledge testified falsely regarding defendant's arrest and, the search and seizure of defendant's cellular phone, and that the prosecutor committed misconduct by allowing this perjured testimony to stand. Again, we disagree.

Defendant's perjury argument conflates admissibility of evidence with evidentiary weight. The trier of fact heard testimony from Sgt. Eby and Detective Rutledge giving one version of events. The record also contains video of the interrogation and the search warrant obtained on January 8. The defendant provided another version of events in his brief without any support from the record. He further declined to testify to his version of events.

## V. FLIGHT EVIDENCE

Defendant challenges the evidence of flight introduced at trial and the flight jury instruction being given on grounds of prosecutorial misconduct and ineffective assistance of counsel.

The defendant is entitled to a properly instructed jury. *People v Dupree*, 486 Mich 693, 712; 788 NW2d 399 (2010) (citation omitted). "Jury instructions must therefore include all the elements of the charged offenses and any material issues, defenses, and theories that are supported by the evidence." *People v Fennell*, 260 Mich App 261, 265; 677 NW2d 66 (2004). Defendant is also entitled to the effective assistance of counsel. To prove his claim, defendant must show (1) counsel's performance was below an objective standard of reasonableness and (2) but for counsel's errors, the outcome of the proceeding would have been different. *Ackerman*, 257 Mich App at 455. We review prosecutorial misconduct claims to see if the defendant was

denied a fair and impartial trial. *Rice*, 235 Mich App at 434. Evidence of flight "is probative because it may indicate consciousness of guilt, although evidence of flight by itself is insufficient to sustain a conviction." *People v Coleman*, 210 Mich App 1, 4; 532 NW2d 885 (1995). "The term 'flight' has been applied to such actions as fleeing the scene of the crime, leaving the jurisdiction, running from the police, resisting arrest, and attempting to escape custody." *Id*. (Citation omitted). In this case, the jury was instructed:

> There's been evidence the Defendant tried to run away or hide after the alleged crime. This evidence does not prove guilt. A person may run or hide for innocent reasons such as panic, mistake or fear; however, a person may also run or hide because of a consciousness of guilt. You must decide whether the evidence is true and if true, whether it shows the Defendant had a guilty state of mind.

Contrary to defendant's position, there was direct and circumstantial evidence that defendant hid after the alleged crimes. The events that led to Beasley's death began on the night of January 4, leading into the early morning hours of January 5, 2015. Jackson testified that after the incident with Beasley, defendant went into hiding because he knew the police were looking for him. There was evidence that the police unsuccessfully tried to interview defendant at his home. Sgt. Eby testified that defendant voluntarily came to the police station on January 7, 2015, two days after the murder and after the police visit. Since there was direct and circumstantial evidence that the defendant was hiding, counsel cannot be faulted for failing to make another futile argument.

Defendant also contends that the prosecutor engaged in misconduct by falsely presenting evidence that defendant fled and was in hiding. Defendant's support that evidence that he was hiding was false is only that it came from Jackson, who defendant argues was an incredible witness. The jury however was well-equipped to determine the veracity of Jackson's testimony. *McGhee*, 268 Mich App at 624.

Defendant buttresses his prosecutorial misconduct argument regarding flight testimony by noting that he had contact with Sgt. Steven Ford, who was his cousin and a member of the homicide unit of the Detroit Police Department, between the incident and turning himself in, and that the prosecutor falsely argued in opening statement that Sgt. Ford had no investigative duties in defendant's case in an effort to corroborate Jackson's testimony. He fails to acknowledge the testimony of Sgt. Eby that Detective Ford, who routinely would have handled this type of case, was not allowed any investigative duties on this case, and was excluded from the investigation for the reason that he was defendant's relative. Thus, there is no proof that the prosecutor knowingly made a false statement.

## VI. ADDITIONAL CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues counsel was ineffective for failing to present the following favorable evidence: 1) impeachment of the first responders' testimony with their written reports, 2) a lighter recovered from the scene that did not contain defendant's DNA, 3) the medical examiner's toxicology report that showed drugs and alcohol in Beasley's blood, 4) defendant's own testimony where he argues he was persuaded by counsel not to testify, and 5) Facebook social media evidence that suggested an alibi defense.

To prove his claims of ineffective assistance of counsel, defendant must show (1) counsel's performance was below an objective standard of reasonableness and (2) but for counsel's errors, the outcome of the proceeding would have been different. *Ackerman*, 257 Mich App at 455. "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). "[T]he failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). "Counsel always retains the duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012) (citation and quotation marks omitted). "Trial counsel is responsible for preparing, investigating, and presenting all substantial defenses." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Kelly*, 186 Mich App 524, 526; 465 NW2d 569 (1990).

Defendant argues that counsel was ineffective for failing to impeach the testimony from first responders Dabrowski, Belser, and Thomas with their written reports. This assertion has no merit. Defense counsel did address the omissions and inconsistencies between and among the reports in the context of his theory of defense. The defense trial theory was that Jackson and Cory were the ones who killed Beasley. In advancing this theory, trial counsel challenged the identification testimony from the above first responders on the basis that what they testified to was not contained in their reports and in closing statement argued that these witnesses made up their testimony along the way to conform to the prosecutor's theory of the case.

Defendant also argues counsel was ineffective for failing to raise the issue that a lighter found at the scene did not have defendant's DNA on it. In his affidavit, defendant suggests that the lighter was circumstantial evidence that he was not at the scene of the crime and that an unknown third person may have been present and responsible for the crimes against Beasley. This argument is also without merit. The presence of the lighter and the issue of there being no DNA was addressed through witness testimony and argued by defense counsel in closing. Chief Patrick McNulty testified that he found two plastic lighters and a metal lighter with a "finger signature." Sgt. Griffin testified that of the 48 items collected in connection with this case, and the buccal swabs from defendant, Jackson and Earl, no DNA was found nor conclusion reached to connect those individuals to the items collected. Defense counsel highlighted this testimony and made the connection between it and the prosecutor's failure to test items found at the scene with DNA from Jackson or Cory.

Defendant further argues that counsel was ineffective for not addressing Beasley's toxicology report which defendant argues would have shown a level of intoxication. Decisions as to what questions to ask and what evidence to present are presumed to be matters of trial strategy. *Rockey*, 237 Mich App at 76. We find that defense counsel's decision not to ask any questions of the medical examiner was a matter of trial strategy. It is true that the record supports the fact that Beasley consumed alcohol on the night of his death. However, even if there was a basis for an inference that Beasley was intoxicated, it was reasonable for defense counsel to forgo questioning on that issue. Dr. Kesha testified to the extent of Beasley's burns, that he was stabbed, and that the manner of his death was murder. The prosecutor, also, admitted the autopsy report along with photographs of Beasley. Questioning on the toxicology report

-12-

would have led to re-direct as to the effect the injuries may have had on the lab results. Given the gruesome pictures and testimony, it was not unreasonable for defense counsel to limit further questioning on the victim's physical state.

Defendant also avers that counsel persuaded him not to testify in his own defense and refused to allow his father to testify in his defense. In his affidavit, defendant asserted that counsel told him he did not need to testify because defendant's statement was already entered into evidence and counsel was going to corroborate it with statements defendant made to the police and text messages from defendant's wife. Defendant's claim that he was denied the right to testify is unsupported in the record. At the end of the prosecutor's case-in-chief, defendant was questioned on the record about whether he would testify in his own defense. At that time, defendant agreed on the record that after speaking extensively with defense counsel about the pros and cons of testifying, it was his decision alone not to testify in his case. Further, in his affidavit, defendant admits conversation with his counsel about the wisdom of his taking the witness stand in light of the trial strategy. Defendant's argument instead appears to be a claim that the strategy he and defense counsel discussed involving his decision not to testify did not work out as planned. The fact that counsel's strategy failed does not constitute ineffective assistance of counsel. *People v Kevorkian*, 248 Mich App 373, 415; 639 NW2d 291 (2001). Defendant also argues that counsel was ineffective for failing to call his father as a witness. Defendant does not provide an offer of proof as to what testimony his father would have provided. His claim of ineffective assistance based on counsel's failure to call the father as a witness is therefore speculative. Further, the decision of which witnesses to call is presumed to be a matter of trial strategy which this Court will not second-guess. *Rockey*, 237 Mich App at 76.

Defendant additionally argues that counsel was ineffective for not presenting evidence from defendant's Facebook social media page that he argues would have shown he was logged in at the time of the offense and possibly told his location. Defendant asserts that this evidence suggested an alibi. However, as noted above, defendant waived his right to testify, and thus the ability to introduce this evidence.

Defendant also argues that trial counsel failed to communicate with him and keep him updated on the progress of his case. However, at a November 7, 2016 hearing, just three days before the beginning of defendant's trial, where defendant rejected the plea offer on the record, defendant answered "Yes" when defense counsel asked, "And you and I have talked about the details of your case on several occasions; is that correct, Mr. Ford?" In this case, there was a clear strategy followed throughout defendant's case from the questioning of witnesses to the final argument to illustrate that defendant was not responsible for Beasley's murder. This argument is not persuasive.

## VII. ADDITIONAL CLAIMS OF PROSECUTORIAL MISCONDUCT

"In order to preserve a claim of prosecutorial misconduct for appellate review, a defendant must have timely and specifically objected below, unless objection could not have cured the error." *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). The record does not show that any of the claimed instances of prosecutorial misconduct were objected to at trial and they are therefore, unpreserved. We review for plain error affecting defendant's

-13-

substantial rights unpreserved claims of prosecutorial misconduct. *People v Cox*, 268 Mich App 440, 451; 709 NW2d 152 (2005). "The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *Rice*, 235 Mich App at 434. Defendant bears the burden of showing he was prejudiced by the prosecutorial misconduct. *Carines*, 460 Mich at 763. Issues of misconduct are decided on a case-by-case basis. *Brown*, 294 Mich App at 382-383.

Defendant first argues that it was misconduct for the prosecutor to "tamper" with Sgt. Eby's testimony by making gestures during his testimony. The gestures were not captured by the record and despite defendant's claim that the prosecutor "can be seen," no video of this portion of the trial was provided to this Court. Neither does defendant reference where in the trial transcript these gestures occurred. Nevertheless, defendant's own description of the events demonstrates that the prosecutor's conduct did not deny him a fair trial. Defendant argues two instances involving gesturing. In the first instance, defendant argues the prosecutor shook her head and mouthed "no, no, no" when Sgt. Eby began to testify in contradiction to prior testimony. Defendant does not argue that the prosecutor's gestures caused Sgt. Eby to change his line of testimony and inconsistent testimony from a prosecution witness undoubtedly helped defendant. In the second instance, defendant argues the prosecutor was "moving one hand over the other and pulling them apart repeatedly gesturing" for Sgt. Eby to stop. This instance, like the first, illustrates a favorable situation for defendant where Sgt. Eby must have been providing testimony helpful to the defense. Defendant's description that the prosecutor "repeatedly" gestured for Sgt. Eby to stop also implies Sgt. Eby was unmoved by the prosecutor's gestures. Again, defendant does not argue that the prosecutor's gesturing was effective in denying him any particular testimony and there is no showing that the conduct denied him a fair trial.

Defendant next claims that the prosecution tampered with witness Stan Brue's trial testimony. He contends Brue altered his preliminary examination testimony at the behest of the prosecutor and law enforcement in order to make his testimony support Jackson's testimony and the prosecutor's case theory. " 'It is a general rule that the intentional spoliation or destruction of evidence raises the presumption against the spoliator where the evidence was relevant to the case or where it was his duty to preserve it, since his conduct may properly be attributed to his supposed knowledge that the truth would operate against him.' " *Trupiano v Cully*, 349 Mich 568, 570; 84 NW2d 747 (1957) quoting 20 Am Jur, Evidence, § 185, p 191. " 'Such a presumption can be applied only where there was intentional conduct indicating fraud and a desire to destroy and thereby suppress the truth.' " *Id*. "The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *Rice*, 235 Mich App at 434. The basis of defendant's spoliation claim is dependent on a comparison of Brue's testimony from Jackson's March 21, 2016 preliminary examination with Brue's testimony from defendant's trial on November 16, 2016. Defendant attached the exhibits he argues Brue relied on, but did not attach the preliminary examination testimony interpreting the exhibits. Defendant's failure to provide this Court with the preliminary examination transcript "makes review of the factual issues impossible" because the claimed error lies in the testimony. *People v Tyler*, 100 Mich App 782, 788; 300 NW2d 411 (1980). Therefore, defendant has failed to provide this Court with evidence that Brue or the prosecution intentionally altered evidence.

Defendant additionally argues that the prosecutor engaged in misconduct by suppressing lab reports that showed a lighter was recovered from the crime scene not containing either defendant's or Beasley's DNA. Defendant is incorrect in this assertion. The lab reports were

introduced into evidence through Sgt. Griffin. Defendant further argues that the prosecutor elicited false testimony from Sgt. Griffin that none of the items collected at the scene were fruitful for DNA and then improperly argued that there was no DNA at the scene. Defendant takes this evidence out of context. Logically, the prosecutor was only concerned with whether defendant's DNA was present at the crime scene. In this respect, because none of the items collected contained defendant's DNA, the lab results were not fruitful. It was thus, not false or a mischaracterization of the evidence for the prosecutor to argue in closing that there was no DNA at the scene.

Defendant lastly contends that the prosecutor committed misconduct by improperly arguing that blood found in a glove retrieved from defendant was either consistent with defendant having blood on his hands or from injury. "[A] prosecutor may not argue facts not in evidence or mischaracterize the evidence presented." *People v Watson*, 245 Mich App 572, 588; 629 NW2d 411 (2001). However, "[p]rosecutors are free to argue the evidence and any reasonable inferences arising from the evidence." *Cox*, 268 Mich App at 451. Defendant asserts that the prosecutor's argument was prejudicial when the lab report did not in fact find that the DNA was blood, nor was there evidence that defendant's hands were bleeding. In closing, the prosecutor argued

> And what's interesting is that there was a glove that was submitted as evidence that was taken from Defendant. And that glove had his blood in it, consistent with bloody hands? Consistent with injuries? So there was a glove that was taken by the police from Defendant that had his DNA on it.

The lab report reported

> The DNA profile obtained from item NV15-518-1A (Possible bloodstain from glove) is consistent with a male contributor. The DNA profile from NV15-518-1A (Possible bloodstain from glove) matches the DNA profile from item NV15-5184A (Marcus Ford – known buccal).

The prosecutor did not engage in misconduct by arguing that the glove had blood in it. The lab report's "Possible bloodstain" conclusion did not rule out the presence of blood and equally supported the reasonable inference that the DNA could have been blood.

## VIII. DEFENDANT'S RIGHT TO A SPEEDY TRIAL

### A. PRESERVATION OF ISSUE

"In order to properly preserve his right to a speedy trial, a defendant must make a formal demand on the record that he be brought to trial." *People v Rogers*, 35 Mich App 547, 551; 192 NW2d 640 (1971). Defendant admits this issue was not preserved below by motion or objection. The record shows the same.

### B. STANDARD OF REVIEW

"Whether defendant was denied his right to a speedy trial is an issue of constitutional law, which we [generally] review de novo." *People v Williams*, 475 Mich 245, 250; 716 NW2d

-15-

208 (2006). We review an unpreserved speedy trial issue for plain error affecting the defendant's substantial rights. *Carines*, 460 Mich at 763-764.

## C. ANALYSIS

"Both the United States Constitution and the Michigan Constitution guarantee a criminal defendant the right to a speedy trial." *Williams*, 475 Mich at 261. Our Supreme Court adopted the *Barker*[3] standards for a speedy trial in *People v Grimmett*, 388 Mich 590, 606; 202 NW2d 278 (1972), overruled on other grounds in *People v White*, 390 Mich 245; 212 NW2d 222 (1973) overruled on other grounds in *People v Nutt*, 469 Mich 565; 677 NW2d 1 (2004). Accordingly, we consider four factors when evaluating whether a defendant was deprived his right to a speedy trial:

> (1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant. Following a delay of eighteen months or more, prejudice is presumed, and the burden shifts to the prosecution to show that there was no injury. [*Williams*, 475 Mich at 261-262; (internal citation omitted)].

The first factor is the length of the delay. This factor favors the defendant. "[T]here is no set number of days between a defendant's arrest and trial that is determinative of a speedy trial claim." *People v Waclawski*, 286 Mich App 634, 665; 780 NW2d 321 (2009). "If the total delay, which runs from the date of the defendant's arrest until the time that trial commences, . . . is under 18 months, then the burden is on the defendant to show that he or she suffered prejudice. However, if the delay is over 18 months, prejudice is presumed and the burden is on the prosecution to rebut the presumption." *Id*. A "presumptively prejudicial delay triggers an inquiry into the other factors to be considered in the balancing of the competing interests to determine whether a defendant has been deprived of the right to a speedy trial." *People v Wickham*, 200 Mich App 106, 109–110; 503 NW2d 701 (1993). Sgt. Eby testified that defendant was arrested on January 7 or 8, 2015. Trial began November 10, 2016. We calculate the number of days in between to be 673, which is equal to 1 year, 10 months, and three days, or 22 months. Given that the delay was greater than 18 months, this Court presumes prejudice, "and the burden shifts to the prosecution to show that there was no injury." *Williams*, 475 Mich at 262 (citation omitted).

The second *Barker* factor is the reason for the delay. This factor favors no one. Delays can be attributable to either the defendant or the prosecutor. "[D]elays inherent in the court system, e.g., docket congestion, 'are technically attributable to the prosecution[;] they are given a neutral tint and are assigned only minimal weight in determining whether a defendant was denied a speedy trial.' " *People v Gilmore*, 222 Mich App 442, 460; 564 NW2d 158 (1997), quoting *Wickham*, 200 Mich App at 111. Defendant argues that he was not responsible for the delay and

---

[3] *Barker v. Wingo*, 407 US 514; 92 S Ct 2182; 33 L Ed 2d 101 (1972).

the prosecutor argues that without records from defendant's prior case numbers, this Court has no evidence either way. After review of the entire record, we attribute some delay to defendant and some to the prosecutor. Even so, there is still nearly a year of unaccounted time from January 7, 2015 to January 26, 2016, for which the Court cannot attribute the delay to either party.

The third *Barker* factor is defendant's assertion of the right. This factor favors the prosecutor. Defendant admits he did not assert a speedy trial right at trial. Neither did defendant object to any of the delays.

The fourth *Barker* factor is prejudice to the defendant. This factor also weighs in favor of the prosecutor. "There are two types of prejudice which a defendant may experience, that is, prejudice to his person and prejudice to the defense." *People v Collins*, 388 Mich. 680, 694; 202 NW2d 769 (1972). Defendant argues his defense was prejudiced by the delay, because his mother Patrick, a key witness, died during the delay. Defendant asserts that Patrick would have testified that she sent the text messages about Beasley to multiple people, not just defendant and that Beasley and Jackson left together. This same testimony was presented by Sgt. Eby who testified that Patrick's text messages were sent as group text messages to both defendant and Jackson. Sgt. Eby also read defendant's interrogation into the record where defendant stated he left Marcia's to go to a party store with Jackson and Beasley and that he and Jackson left Beasley there. While Patrick's testimony could have corroborated Sgt. Eby's testimony, defendant cannot argue that his defense was prejudiced because Patrick's absence did not wholly deprive him of sharing the substance of her testimony with the jury.

Of the four *Barker* factors, one weighs in favor of the defendant and two weigh in favor of the prosecutor. The resolution of defendant's speedy trial claim is dependent on the reason for the delay. Under the plain error rule, defendant failed to show that his substantial rights were affected by the delay from January 2015 to January 2016. Under the *Barker* factors, defendant was granted the presumption of prejudice yet, there was no showing of injury from the delay.

Defendant also faults trial counsel for not moving to dismiss his case on speedy trial grounds. Defendant cannot establish that he was denied his right to a speedy trial because again, he fails to account for a year delay in the proceedings and, that he was prejudiced or injured by the delay. Consequently, defendant cannot show that but for counsel's error, a different outcome reasonably would have resulted.

Affirmed.

/s/ Kathleen Jansen
/s/ Patrick M. Meter
/s/ Cynthia Diane Stephens

-17-